```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
------------------------------------------------------

ALI MAJED SOUDI ALFAR,

                Petitioner,         22-cv-10260 (JGK)

      - against -                **MEMORANDUM OPINION AND ORDER**

TAMIKA GRAY, ET AL.,

                Respondents.

------------------------------------------------------

**JOHN G. KOELTL, District Judge:**

    This case concerns certain alleged legal errors that the petitioner, Ali Majed Soudi Alfar, claims occurred during his unsuccessful naturalization proceedings before the United States Citizenship and Immigration Services ("USCIS"). Invoking the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1101 et seq., and pursuant to section 310(a) thereof, § 1421(c), the petitioner seeks de novo judicial review of USCIS's denial of his naturalization application. He also seeks to set aside the agency action as arbitrary and capricious pursuant to the Administrative Procedure Act ("APA"), codified at 5 U.S.C. § 551 et seq.

    The respondents now move to dismiss the petition pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explained below, the motion is **granted** and the current petition is **dismissed with prejudice**.

1

I.

Unless otherwise noted, the following facts are taken from the Amended Petition ("Am. Pet."), ECF No. 45, and are accepted as true for purposes of the motion to dismiss.

A.

The petitioner Alfar is a citizen of Jordan. Am. Pet. ¶ 9. In October 2012, Alfar's ex-wife, a United States citizen, filed on his behalf a Form I-130, Petition for Alien Relative, and Alfar concurrently filed a Form I-485, Application to Register Permanent Residence or Adjust Status (the "First I-485"). Id. ¶¶ 10-11, 15. Alfar's ex-wife later withdrew the Form I-130, and Alfar then withdrew his First I-458 application. Id. ¶¶ 12, 14.

In February 2013, the Department of Homeland Security ("DHS") placed Alfar in removal proceedings. Id. ¶ 13. In late April 2013, Alfar filed a Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, as a self-petitioning spouse of a United States citizen. Id. ¶ 15. In view of the pending Form I-360 petition, an immigration judge ("IJ") on May 3, 2013 "signed an order placing Mr. Alfar's removal proceedings in administrative closure." Id. ¶ 16. Because administrative closure is a docket management tool used to stay removal proceedings, the IJ's order did not terminate Alfar's removal proceedings. See id. ¶ 16 n.1.

In January 2014, USCIS approved Alfar's Form I-360 petition. Id. ¶ 17. On March 28, 2014, based on the approved Form I-360, Alfar filed a second Form I-485 petition (the "Second I-485"). Id. ¶¶ 18, 20. On the Second I-485, Alfar responded "No" to the question, "Have you EVER been deported from the United States, or removed from the United States at government expense, excluded within the past year, or are you now in exclusion, deportation, removal, or rescission proceedings?" Id. ¶ 38. On June 23, 2014, USCIS approved Alfar's Second I-485 petition and provided him lawful permanent resident status. Id. ¶ 22.

Three years later, in June 2017, Alfar filed a Form N-400, Application for Naturalization. Id. ¶ 23. On September 5, 2020, USCIS administratively closed Alfar's naturalization application after the agency discovered that his removal proceedings had not been formally terminated. Id. ¶ 27. In February 2021, Alfar filed a motion to terminate his removal proceedings based exclusively on the USCIS's grant of permanent resident status to Alfar in June 2014. Id. ¶¶ 29-30. On February 4, 2021, an immigration judge entered an order terminating Alfar's removal proceedings. Id. ¶ 32. On May 12, 2021, USCIS denied Alfar's Form N-400 naturalization application. Id. ¶ 34.

Following the denial of his naturalization application, Alfar filed a Form N-336, Request for a Hearing on a Decision in

Naturalization Proceedings, which USCIS denied on August 4, 2022. Id. ¶¶ 35-36, 51-52. In its Form N-336 denial decision, the USCIS stated that "Alfar was not lawfully admitted for permanent residence because USCIS did not have jurisdiction to approve his second I-485 application." Id. ¶ 37. USCIS also said the agency had mistakenly approved Alfar's Second I-485 application, relying upon the information provided on the Second I-485 application and the testimony provided during Alfar's I-485 interview. Id. ¶¶ 37-38.

**B.**

Alfar filed this action on December 2, 2022. ECF No. 1. The respondents answered on November 13, 2023. ECF No. 20. Alfar then filed the operative Amended Petition on May 8, 2024. ECF No. 45. The respondents now move to dismiss the Amended Petition for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 52.

**II.**

**A.**

Pursuant to 8 U.S.C. § 1421(c), the Court reviews de novo the denial of a naturalization application by USCIS and is not limited to the administrative record. Chan v. Cantner, 464 F.3d

289, 290-91 (2d Cir. 2006).[1] But "because the review of naturalization proceedings is subject to the Federal Rules of Civil Procedure, a court need not conduct an evidentiary hearing" in cases where "there are no disputed issues of material fact." Del Orbe v. Holder, No. 12-cv-1057, 2012 WL 3826182, at *2 (S.D.N.Y. Aug. 27, 2012). "The applicant bears the burden of establishing that he is entitled to naturalization," and "must affirmatively show that he has met all statutory requirements for becoming naturalized citizen." Rivera v. U.S. Citizenship & Immigr. Servs., 5 F. Supp. 3d 439, 442 (S.D.N.Y. 2014) (citing Berenyi v. Dist. Dir., Immigr. & Naturalization Servs., 385 U.S. 630, 637 (1967)).

### B.

To prevail against a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept as true the material factual allegations in the complaint. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id. Indeed,

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

5

where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings to determine whether jurisdiction exists. See Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by that body of decisional law that has developed under Rule 56. See id.

### c.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most

favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III.

The respondents argue that the Amended Petition should be dismissed for the following reasons: (1) USCIS lacked jurisdiction over Alfar's Second I-485 application at the time of adjudication because he was in removal proceedings pending before the IJ; (2) res judicata does not apply to the IJ's termination order; and (3) the APA claim is unavailable where the petitioner has an alternative remedy. Gov't's Mem. of Law in Support 8-15, ECF No. 53; Gov't's Rep. 1-6, ECF No. 55. Alfar opposes and additionally asserts that this Court lacks jurisdiction to review the IJ's change of status decision. Pet'r's Mem. in Opp. 2-10, ECF No. 54. Each argument is addressed in turn.

### A.

The USCIS correctly denied Alfar's application for naturalization. "The general naturalization statute, 8 U.S.C. § 1427, sets forth various conditions with which an individual must comply in order to be eligible for naturalization." Boatswain v. Gonzales, 414 F.3d 413, 416 (2d Cir. 2005). As one of the preconditions for naturalization, an applicant must be "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a); see id. § 1429 ("[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."). The applicant bears the burden of establishing all naturalization requirements by a preponderance of the evidence. See 8 C.F.R. § 316.2(b).

The INA defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). For a noncitizen "to be 'lawfully admitted for permanent residence' [the noncitizen] must have complied with the substantive legal requirements in place at the time [the noncitizen] was admitted for permanent residence." See De La Rosa v. DHS, 489 F.3d 551, 555 (2d Cir. 2007). Procedural regularity is insufficient: "even for those

who obtained their [lawful permanent resident] status by mistake rather than fraud, if [the] petitioner fails to demonstrate" substantive compliance with the "legal requirements at the time [the] petitioner was admitted for permanent residence, then [the] petitioner was never 'lawfully admitted for permanent residence.'" Villafana v. Holder, 358 F. App'x 245, 246 (2d Cir. 2009) (quoting De La Rosa, 489 F.3d at 555)).

A noncitizen in the United States typically may seek lawful permanent resident status by filing a Form I-485, Application to Register Permanent Residence or Adjust Status, and supporting documents. 8 C.F.R. § 245.2(a)(3). USCIS generally has jurisdiction to adjudicate an I-485 application, "unless the immigration judge has jurisdiction to adjudicate the application under CFR 1245.2(a)(1)." 8 C.F.R. § 245.2(a)(1). "In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file." 8 C.F.R. § 1245.2(a)(1)(i).

Pursuant to 8 C.F.R. § 245.2(a)(1) and § 1245.2(a)(1)(i), the USCIS plainly did not have jurisdiction over the Second I-485 application at the time of adjudication because the petitioner was still in pending removal proceedings before the IJ. See Am. Pet. ¶¶ 16, 32. Instead, the IJ presiding over

9

Alfar's removal proceedings retained exclusive jurisdiction over "any application for adjustment of status" that he filed. 8 C.F.R. § 1245.2(a)(1)(i).

Because the USCIS was without jurisdiction to grant Alfar permanent resident status at the time of adjudication, the agency's decision to grant him such status in June 2014 was void "ab initio" and he never "obtained lawful permanent resident status." De La Rosa, 489 F.3d at 554.[2] "The natural reading of 'lawful' connotes more than just procedural regularity; it suggests that the substance of an action complied with the governing law." De La Rosa, 489 F.3d at 554 (citing Matter of Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983) & Black's Law Dictionary 902 (8th ed. 2004) (defining "lawful' as '[n]ot contrary to law")). Without lawful permanent resident status, the petitioner was not eligible to be naturalized. 8 U.S.C. §§ 1427(a) & 1429. Accordingly, USCIS properly denied Alfar's application for naturalization.

---

[2] In reaching its holding, the De La Rosa court applied the framework established by Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). Although Loper Bright Ents. v. Raimondo overruled Chevron, the Court made clear that its decision "do[es] not call into question prior cases that relied on the Chevron framework." 144 S. Ct. 2244, 2273 (2024). Moreover, the De La Rosa court stated that the Board of Immigration Appeals's interpretation of the INA was the definition "to which [the court] would defer if [the court] were to find that the language at issue was ambiguous." 489 F.3d at 554. Therefore, De La Rosa's holding remains good law: "an alien is only lawfully admitted for permanent residence for purposes of the INA if his or her adjustment to lawful permanent resident complied with substantive legal requirements." Id. at 553.

**B.**

The petitioner attempts to escape this unavoidable outcome by invoking the doctrine of res judicata. Specifically, the petitioner points to the IJ's February 2021 decision to terminate his removal proceedings based on the USCIS's grant of permanent resident status to Alfar in June 2014. The petitioner contends that the IJ could not have reached this outcome without deciding that Alfar obtained lawful permanent resident status in June 2014. Based on the above, the petitioner argues that the IJ's termination decision now precludes litigation before this Court on the issue of whether the petitioner obtained lawful permanent resident status before he applied for naturalization.

Res judicata refers collectively to claim preclusion and issue preclusion: the two doctrines that decide "[t]he preclusive effect of a judgment." Taylor v. Sturgell, 553 U.S. 880, 892 (2008). In this case, the petitioner invokes issue preclusion, which "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)). Issue preclusion "bars litigation of an issue when[:]

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a

11

> full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013) (quoting Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006)).

"The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion." Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996). "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment, and issue preclusion will apply only if it is quite clear that this requirement has been met." Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48 (2d Cir. 2003). "In contrast, the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion." Kulak, 88 F.3d at 72.

Issue preclusion "often applies" where an administrative agency "'act[s] in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 148 (2015) (quoting Univ. of Tenn. v. Elliott, 478 U.S. 788, 797–98 (1986)). But "issue preclusion obviously [does] not" apply when "the ordinary elements" are not

12

met. Id. at 153; see also id. at 160-61 (Ginsburg, J., concurring).

In this case, issue preclusion does not apply to the IJ's order terminating the petitioner's removal proceedings. As the party seeking to apply issue preclusion, the petitioner must "show[] with clarity and certainty what was determined by the prior judgment." See Postlewaite, 333 F.3d at 48. But the Amended Petition does not allege that the specific issue of lawful admission for permanent residence was actually litigated or resolved before the IJ. Instead, the Amended Petition merely states a legal conclusion that this Court need not accept as true: "To adjudicate Mr. Alfar's motion to terminate, the immigration court had to decide whether Mr. Alfar had been lawfully admitted as a permanent resident." See Am. Pet. ¶ 31. With no factual allegations to support this bare legal assertion, the Amended Petition fails to raise the plausible inference that issue preclusion may apply to the IJ's termination decision.

And because § 1421(c) provides for de novo judicial review, this Court must review whether the petitioner was eligible for naturalization, including whether the USCIS lacked jurisdiction to adjudicate the petitioner's adjustment-of-status application at the time the agency erroneously granted him permanent resident status. See Chan, 464 F.3d at 290-91.

13

Moreover, the Supreme Court has long held that "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [statutory] limitations." INS v. Pangilinan, 486 U.S. 875, 885 (1988). Instead, courts perform "a specific function . . . in strict compliance with [8 U.S.C. § 1421(d)] which states that '[a] person may be naturalized . . . in the manner and under the conditions prescribed in this subchapter, and not otherwise.'" Id. at 884 (quoting and adding emphasis to § 1421(d)). Thus, even where there are "considerable equities" favoring a petitioner's case, "[w]ell-settled case law bars a court from exercising its equity powers to naturalize citizens." Hizam v. Kerry, 747 F.3d 102, 111 (2d Cir. 2014).

There is no doubt that "issue preclusion is an equitable doctrine" subject to the normal constraints on equitable doctrines. CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 78 (2d Cir. 2017). Thus, in any event, this Court "lack[s] authority to provide [the petitioner] with the relief he seeks" based on issue preclusion alone. See id. at 111. The Amended Petition must therefore be **dismissed**.

### C.

As for the petitioner's APA claim, the APA permits judicial review of "final agency action for which there is no other

adequate remedy in a court." 5 U.S.C § 704. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988).

In this case, "8 U.S.C. § 1421(c) provides de novo judicial review of the denial of a naturalization application." Li v. Garland, No. 21-cv-10601, 2022 WL 17095250, at *14 (S.D.N.Y. Nov. 21, 2022). "This review is in accordance with chapter 7 of title 5 of the APA, making the full scope of APA review available in a § 1421(c) action." Id. "Because there is another adequate remedy through the review process explicitly granted by the INA," this Court "lacks subject-matter jurisdiction to adjudicate [the petitioner's] APA claim." Id. Accordingly, the petitioner's APA claim must be **dismissed.**

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted.**

Generally, leave to amend should be freely granted. See Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend should be granted in the absence of "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." Monahan v. N.Y.C. Dep't of

Corr., 214 F.3d 275, 283 (2d Cir. 2000). For the reasons provided above, any amendment would be futile. The Amended Petition is therefore **dismissed with prejudice.**

The Clerk is directed to close all pending motions and to enter judgment dismissing the case.

**SO ORDERED.**

**Dated:**   New York, New York
             October 31, 2024

_____
John G. Koeltl
United States District Judge